IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANNE-MARIE BYRNE,

    **Plaintiff,**

    vs.                                  Case No.
                                            04-2220-GTV

GAINEY TRANSPORTATION SERVICES
INC.,

    **Defendant.**

## MEMORANDUM AND ORDER

Plaintiff Anne-Marie Byrne brings this retaliatory discharge action against her former employer, Defendant Gainey Transportation Services Inc., pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq. Plaintiff claims that her employment was terminated because she complained of gender discrimination. Defendant filed a motion for summary judgment (Doc. 62) seeking dismissal of Plaintiff's retaliation claim on the basis that (1) Plaintiff did not engage in protected activity; (2) there was no causal connection between any alleged protected activity and her termination; and/or (3) Plaintiff has presented no evidence that Defendant's stated reason for firing Plaintiff was pretextual. For the following reasons, the court denies Defendant's motion.

1

## I. FACTUAL BACKGROUND

The following facts are taken from the summary judgment record and are either uncontroverted or viewed in the light most favorable to the non-moving party's case. Immaterial facts and facts not properly supported by the record are omitted. References to testimony are from depositions, unless otherwise noted.

Plaintiff was a National Account Executive for Defendant. Her job duties included bringing in new business, representing the company, and being involved in rate and contract negotiation with Defendant's customers. She worked for Defendant from March 20, 2000 through October 23, 2000, when she voluntarily resigned her employment. Defendant then rehired Plaintiff on November 13, 2000, and she worked for Defendant until she was terminated on February 10, 2003.

In May 2001, Plaintiff's supervisor, Brad Church, learned that a customer wanted Plaintiff removed from its account. In late January 2002, another customer wrote a letter of complaint, stating that Plaintiff had insulted him, "questioned [his] integrity, was belligerent, and stated that [he] could not make good decisions due to the lack of years [he] had in the trucking business." The customer stated that he did not want Plaintiff to ever call him again, but Plaintiff ignored that expressed desire and called him in September 2002, resulting in another complaint from the customer.

Other employees of Defendant also made complaints about Plaintiff on a "daily" basis.[1]

---

[1] Plaintiff denies this and other statements on the basis that they are inadmissible hearsay. But Plaintiff made the statements in her deposition. A statement against interest is admissible

Many employees and executives, including the owner and President Harvey Gainey, Vice President of Operations Brent Jordan, and Vice President of Marketing Bob Karel, told Plaintiff she had a problem getting along with people. In late September 2002, Mr. Church told Plaintiff that Mr. Jordan wanted to terminate her because she could not get along with others.

On January 23, 2003, Plaintiff claims that Mr. Jordan called her and verbally harassed and berated her. He told her that she was "incompetent compared to her male counter-parts" and that the males could work circles around her. Plaintiff thought this was not true and thought the conversation was the culmination of how Mr. Jordan and other male executives had been treating her for a long time. She thought Mr. Jordan, Mr. Karel, and Vice President David Ortega had continually berated her and threatened to fire her. She thought that she had her work more closely scrutinized, and that she had been denied prompt shipment of customers' freight, the right to work from home, an account base equivalent to that given to males, and adequate clerical support.

Plaintiff called Mr. Gainey on his cell phone and relayed the phone conversation with Mr. Jordan. She explained that Mr. Jordan had a problem with women in the workplace, that he had unfavorably and inaccurately compared her to male counter-parts, and that he was trying to push her out of her job.

Plaintiff next saw Mr. Gainey on January 30, 2003 at a business dinner. She told him that she wanted to make sure he understood that she was not claiming that he was discriminating

---

evidence. Fed. R. Evid. 804(b)(3).

against her, but rather that his "underlings" were. She told him that she thought sometimes men felt threatened by women in the workplace because women reminded them of their mother, grandmother, sister, girlfriend, and/or spouse, and reminded them that a woman had a lot of power over a man.

On February 10, 2003, Plaintiff's employment was terminated during a meeting with Mr. Jordan and Joe Lunetta, the new Facility Manager in Kansas City. When Plaintiff asked Mr. Jordan why she was being terminated, he indicated that it was "based upon your conversation with Harvey Gainey last week." Plaintiff did not have a conversation with Mr. Gainey the prior week about harassment or discrimination, but her last conversation with him had been the January 30 conversation about discrimination.

Although Defendant denies that Mr. Gainey was involved in the decision to terminate Plaintiff, a termination requires his signature. He closely controls the company, and had previously intervened numerous times to prevent others from firing Plaintiff. Mr. Gainey signed Plaintiff's termination form on February 10. And Mr. Jordan admitted that he met with Mr. Gainey the week of February 3, 2003 about Plaintiff's employment and that Mr. Gainey then agreed that "something had to be done" "up to and including termination."

Defendant has given conflicting reasons for Plaintiff's termination. The termination form states that it was for performance, but Mr. Jordan testified in deposition that it was not because of her performance. He testified that he told her it was "based on the conversation that you and [Mr. Gainey] had last week in regard to getting along with people." Papers attached to the termination form indicate that it may have been for several reasons, including failure to follow

4

orders and inability to get along with her team. Mr. Gainey told Plaintiff that she was fired because she lost an account.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Lack of a genuine issue of material fact means that the evidence is such that no reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. Anderson, 477 U.S. at 256. "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Id. The court must consider the record in the light most favorable to the nonmoving

party.  Bee v. Greaves, 744 F.2d 1387, 1396 (10th Cir. 1984).

### III.  DISCUSSION

Title VII prohibits an employer from discriminating against an employee on the basis of the employee's sex, among other things.  See 42 U.S.C. § 2000e-2(a).  Where, as here, there is no direct evidence of discrimination, the court applies the three-step, burden-shifting analysis set forth by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997) (citation omitted) (applying McDonnell Douglas analysis to ADA discrimination claim).  Under the McDonnell Douglas analysis, the plaintiff bears the initial burden of establishing a prima facie case of discrimination.  411 U.S. at 802.  If the plaintiff presents a prima facie case, then the burden shifts to the defendant to offer evidence suggesting a legitimate, non-discriminatory reason for the adverse employment action taken against the plaintiff.  Id.  Once the defendant articulates a legitimate, non-discriminatory reason, the ultimate burden reverts to the plaintiff to demonstrate an issue of material fact as to whether the proffered reason is pretextual.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993) (citation omitted).  Pretext can be established if the plaintiff shows either "that a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence."  Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981) (citation omitted).  "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000).

To establish a prima facie case of retaliation, a plaintiff must show that: (1) she engaged in protected activity; (2) she suffered an adverse employment action subsequent to or contemporaneously with engaging in the protected activity; and (3) a causal connection existed between the employee's protected activity and the adverse employment action. Robbins v. Jefferson County Sch. Dist. R-1, 186 F.3d 1253, 1258 (10th Cir. 1999) (citation omitted) (Title VII); Conner v. Schnuck Markets, Inc, 121 F.3d 1390, 1394 (10th Cir. 1997) (citation omitted) (FLSA).

### A. Protected Activity

Defendant first argues that Plaintiff lacked a good faith belief that she had been discriminated against before complaining to Mr. Gainey of discrimination. The "protected activity" element of a retaliation claim is not met unless the plaintiff has a good faith belief that she has been subjected to discrimination. Huddleston v. Lumbermens Mut. Cas. Co., 942 F. Supp. 504, 511 (D. Kan. 1996); see also Hertz v. Luzenac Amer., Inc., 370 F.3d 1014, 1016 (10th Cir. 2004) (citation omitted) ("[A plaintiff must] show that when he engaged in protected opposition, he had a reasonable good-faith belief that the opposed behavior was discriminatory.").

The evidence in this case is controverted as to whether Plaintiff held a good faith belief that she had been subjected to unlawful discrimination. Although Defendant presents evidence suggesting that Plaintiff complained to Mr. Gainey merely to lay the groundwork for litigation, Plaintiff testified that she had been treated differently from males, and that the conversation in which Mr. Jordan called her "incompetent compared to her male counter-parts" was the

7

culmination of the unequal treatment. Because the facts with regard to this element are controverted, the court denies summary judgment on this issue.

## B.  Causal Connection

### 1.  Decisionmaker's Awareness of Complaints

Defendant next argues that Mr. Jordan was the ultimate decisionmaker in Plaintiff's termination, and he had no knowledge of Plaintiff's complaints of discrimination. The causation element can be satisfied only if "the individual who took adverse action against plaintiff knew of plaintiff's protected activity." Walker v. Runyon, 979 F. Supp. 1363, 1369 (D. Kan. 1997); see also Williams v. Rice, 983 F.2d 177, 181 (10th Cir. 1993) (affirming summary judgment where the plaintiff failed to provide any evidence that the decisionmaker knew of complaints); Carney v. Pena, 992 F. Supp. 1285, 1292-93 (D. Kan. 1998) (granting summary judgment where none of the decisionmakers were aware of protected activity). Moreover, mere knowledge that a plaintiff made a complaint is not enough. The decisionmaker must know that the plaintiff complained of activities made unlawful by Title VII. Petersen v. Utah Dep't of Corr., 301 F.3d 1182, 1188-89 (10th Cir. 2002).

In this case, there is evidence that Mr. Jordan knew that Plaintiff complained to Mr. Gainey about him. But there is no evidence that Mr. Jordan knew that Plaintiff complained of sexual discrimination. The satisfaction of the causation element turns, then, on whether Mr. Gainey was a decisionmaker in Plaintiff's termination. And the evidence on that issue is controverted. Defendant has presented evidence that Mr. Jordan had the authority to terminate Plaintiff and acted on that authority. Plaintiff has presented evidence that Mr. Gainey closely

controls the company, and had previously intervened numerous times to prevent others from firing Plaintiff. Mr. Gainey signed Plaintiff's termination form on February 10, although Defendant points out that when he signed the form, the decision had already been made. Finally, Mr. Jordan admitted that he met with Mr. Gainey the week of February 3, 2003 about Plaintiff's employment and that Mr. Gainey then agreed that "something had to be done" "up to and including termination."

The evidence suggesting that Mr. Gainey had a role in Plaintiff's termination is sufficient to create a genuine issue of material fact for a jury to resolve.

### 2. Causation and Temporal Proximity

Defendant also argues that the causation element is not met because Plaintiff cannot link the stated reason for her termination to her allegedly protected activity. Specifically, Defendant points out that Plaintiff claims that Mr. Jordan informed her during the February 10, 2003 meeting that her discharge was "based upon your conversation with Harvey Gainey last week." There is no evidence that Plaintiff complained of sexual discrimination "last week," or the week of February 3, 2003. But regardless of the reason given for Plaintiff's discharge, the adverse action followed her complaints of discrimination by eleven days. "In the absence of any direct proof of a causal connection, the plaintiff can create an inference of a causal connection from the temporal proximity of the events. An inference based on timing can only be made, however, where close temporal proximity exists between the bringing of the charges and the subsequent adverse action." Watson v. Lucent Techs., Inc., 92 F. Supp. 2d 1129, 1136 (D. Kan. 2000). The Tenth Circuit has held that a one and one-half month period between charges of discrimination

and an adverse action is short enough to establish causation. See Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999) (citing Ramirez v. Okla. Dep't of Mental Health, 41 F.3d 584, 596 (10th Cir. 1994)). Taking Plaintiff's version of the events as true, close temporal proximity exists in this case.

Alternatively, Defendant argues that a close temporal link between Plaintiff's alleged protected activity and her termination is missing because Plaintiff's termination was simply the continuation of a disciplinary process that began before Plaintiff complained of discrimination. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001) ("[A] proceeding along lines previously contemplated, though not yet definitely determined, is no evidence whatsoever of causality.").

The evidence indicates that Plaintiff had been warned before she complained of discrimination that her job was in jeopardy. In September 2002, Mr. Church warned Plaintiff that Mr. Jordan wanted to terminate her employment, and that she would lose her job if she could not learn to get along with others. Likewise, Mr. Jordan's calling Plaintiff "incompetent" in January 2003 may indicate that she was in danger of losing her job. But in the past, Mr. Gainey had always prevented her termination, something he did not do after she complained of discrimination. Again, Plaintiff has presented evidence sufficient to survive Defendant's summary judgment motion.

### **C.  Pretext**

Defendant has offered a legitimate, non-retaliatory reason for Plaintiff's discharge – her inability to get along with others.  The burden then returns to Plaintiff to show that Defendant's stated reason for her termination is pretextual.  St. Mary's Honor Ctr., 509 U.S. at 507-08 (citation omitted).  Pretext can be established if the plaintiff shows either "that a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence."  Tex. Dep't of Cmty. Affairs, 450 U.S. at 256 (citation omitted).  But "mere conjecture that an employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment."  Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir. 1988).

Although much of the evidence in the record indicates that Plaintiff had difficulty getting along with others, Plaintiff's March 2002 performance appraisal paints a different picture.  Section II of the evaluation dealt with interpersonal relationships.  The instructions stated:

> This section of the evaluation concerns personal relationships with fellow associates, supervisors, customers, vendors and others with whom the employee interacts.  Discussion with the employee includes friendliness, cooperation, communication, teamwork and professionalism (language, attire, presentation, phone habits, etc.).

Mr. Church wrote in that section, "The customer is our most important commodity!  Every customer has gone out of their way to make me aware of their appreciation of Anne-Marie's 'can do' attitude and that she represents Gainey Transportation with the highest level of professionalism."  In the next section of the evaluation, he wrote, "Anne-Marie has developed a dynamic relationship with Ruth-Ann Trischler (CSR, KC).  Anne-Marie has been instrumental

in Ruth Ann's productivity and sales skills. Comradarie [sic] is the key to success! Anne-Marie and Ruth Ann are proving it daily." Plaintiff's performance appraisal was completed after several customers had allegedly complained about her. The comments on her performance appraisal create a genuine issue of material fact as to whether Defendant's purported reason for discharging Plaintiff was pretextual.

### D. Economic Damages Beyond October 20, 2004

The parties agree that any claim for economic damages beyond October 20, 2004 should be barred because Plaintiff falsified her employment application with Defendant, and Defendant discovered the false information on that date and would have terminated Plaintiff's employment at that time. The after-acquired evidence doctrine serves as a complete defense to Plaintiff's claim of reinstatement or front pay after October 20, 2004. See McKennon v. Nashville Banner Pub. Co., 514 U.S. 352, 361-62 (1995).

IT IS, THEREFORE, BY THE COURT ORDERED that Defendant's motion for summary judgment (Doc. 58) is denied.

Copies or notice of this order shall be transmitted to counsel of record.

**IT IS SO ORDERED.**

Dated at Kansas City, Kansas, this 18th day of May 2005.

                                      /s/ G. T. VanBebber
                                      G. Thomas VanBebber
                                      United States Senior District Judge